## MAYOR & COUNCIL OF MACON *v.* BIBB COUNTY.

1. By virtue of the Civil Code, §§ 1633, 1646, 1670, municipalities and counties are empowered to establish hospitals and pest-houses for persons afflicted with smallpox, the house established by the municipality being for the care and detention of those within the city limits, and the county pest-house being for the care of those who reside in the county, but outside of the municipality. Where a municipality, instead of maintaining its own pest-house, combines with the county for the treatment of its patients at the county's pest-house, on the basis that the expense is to be apportioned between the municipality and the county according to the number of patients from the city and the county, the city will not be absolved from its obligation to pay its share of the expense on the ground that the county's pest-house is maintained by revenue derived from taxes laid upon residents of the entire county.

2. Where a county by written proposal offers to receive, care for, and treat, at the county pest-house, persons afflicted with smallpox, who are residents of the city, upon the basis that all expenses connected with the operation of the county pest-house shall be apportioned between the city and county according to the number of inmates coming from the city and·the county, and the city shall pay its share monthly, and that the arrangement is to be terminable on thirty days notice by either party, which proposition is accepted by the city; and where the city in subsequent years, during the pendency of the arrangement, sends smallpox patients to the county pest-house, which patients are cared for according to the terms named in the county's proposal, the city will not be relieved from the payment of its proportionate expense on the ground that the arrangement of the city and county to combine the pest-houses is void because, as it is contended, its effect is to create a debt extending beyond the current year, and to bind the successors in office of the city.

JULY 10, 1912.

Complaint. Before Judge Felton. Bibb superior court. June 8, 1911.

*Lane & Park,* for plaintiff in error.

*W. G. Smith* and *Harris & Harris,* contra.

EVANS, P. J. The action is by Bibb county against the Mayor and Council of the City of Macon to recover of the city its pro rata expense of the county smallpox hospital while jointly used by the city under a contract with the county. The exception is to the overruling of the city's demurrer. It appeared from the petition that on December 21, 1903, the mayor of the City of Macon addressed a communication to the board of county commissioners, suggesting a plan for a common pest-house for the treatment of smallpox. A committee was also appointed by the Mayor and Council of the City of Macon for the purpose of effecting some arrangement

with the county authorities for the admission of white persons afflicted with smallpox from the city to the county pest-house. A conference followed, and as a result the following proposition was submitted by the county authorities to the city: "Whereas the Mayor and a Committee of the City Council of the City of Macon, in company with a committee of the Board of Health of the City of Macon, this day came before the Board and suggested, in the interest of economy, that some arrangement be entered into between the City of Macon and the County of Bibb, whereby the City could secure the use and benefit of the county smallpox hospital for the white patients and suspects of the City, and thereby avoid subjecting the City to the expense of establishing a separate smallpox hospital for the exclusive use of the white patients of the City: Ordered, that such suggestion be approved; and the Board agrees and hereby offers to admit to the county smallpox hospital all white patients and suspects of the city sent there by proper city authorities, upon the understanding and contract that all the expenses connected with the operation of the county smallpox hospital, including expenses for enlargement or addition thereto, so long as the same is used thus jointly by the City and county authorities, shall be prorated between the City and county in proportion to the relative number of inmates sent there by the city and county authorities respectively; the City to pay the county each month, or on demand, its proportion of said expenses thus prorated; provided, that this arrangement shall not go into effect until this offer is formally accepted by the City authorities, and it may at any time be terminated by either party on thirty days written notice to the other party; provided further, that the acceptance of this offer shall not in any manner affect any other obligations and liabilities now existing between said parties; provided further, that so long as Dr. Gibson, the county physician, is paid as at present by the City, for looking after city smallpox cases, his salary shall not be included in the expense to be prorated between the City and county as above specified." The Mayor and Council of the City of Macon accepted the proposition on February 3, 1904. The county's proposition and the city's acceptance were duly entered upon the minutes of the city and of the county board. Pursuant to this arrangement the city proceeded to send all of its smallpox cases to the county hospital, and the county received, treated, and provided for them.

The city destroyed its own smallpox hospital, and sent all of its smallpox patients to the county hospital. Upon the faith of and pursuant to the contract or agreement between the city and county authorities, the county admitted to the smallpox hospital 169 smallpox patients in the year 1909, and 252 smallpox patients in the year 1910, sent there by the city, and treated and provided for them according to the agreement, whereby the city became indebted to the county in the sum of $1,050.36 for the year 1909 and $2,088.84 for the year 1910, as set out in detail in the attached exhibits to the petition. The city paid for patients previously sent to the county hospital; and the county, until the city's refusal to pay the amount sued for, had no notice that the city desired to terminate the agreement, or that the city did not recognize the agreement as a subsisting contract, or that the city would refuse to pay the bill which is the basis of the suit.

1. It is urged by demurrer, that, inasmuch as the county revenue is derived from taxation of property within the county of Bibb, which includes the city of Macon, it is as much a part of the duty of the board of county commissioners to treat and care for patients afflicted with smallpox and who live within the corporate limits of the city of Macon as it was and is their duty to care for similar cases within the county but outside the limits of the city of Macon. It is well settled that the State, in the exercise of the police power for the preservation of the public health, has the right to select such agency or agencies as it may deem best for that purpose. 1 Abbott on Municipal Corporations, § 119. The duty of supervision may be delegated to boards of health or other agencies. It can hardly be disputed that the State may give plenary jurisdiction in matters of health and quarantine to a city within its jurisdictional limits, and to the county within its limits, exclusive of the municipal territory. A sanitary district may territorially coincide with a taxing district, or a taxing district may include more than one sanitary district. It is a well-known fact that because of the denseness of urban population the susceptibility to, as well as the fatality of, contagious disease is greater in a city than in sparsely settled rural communities. The city is to be protected from contagion, both from within and without its own limits. The benefits accruing from this protection largely preponderate with the city. The legislature, in appreciation of this

fact, for the common good of all, may empower the county to maintain a hospital for smallpox patients out of the general revenues of the county, and that the city maintain a hospital for the treatment of its own afflicted inhabitants, and at its own expense. As residents of a city receive benefits from, and exercise privileges under, both municipal and county governments, they can be required to contribute by taxation to the support of both. Upon this principle it has been held that though the residents of a city are taxed to keep the streets of the city in repair, they may also be made liable for a tax to keep in repair the county roads outside of the city. Wolfe v. McHargue, 88 Ky. 251 (10 S. W. 809); Byram v. Board of Commissioners, 145 Ind. 240 (44 N. E. 357, 33 L. R. A. 476). It is clear that the legislature contemplated that outside of any municipality the county authorities were to be in control of the smallpox situation, and that the city should look after its own problem. The city authorities thought it would be less expensive to co-operate with the county than to maintain its own separate hospital, and entered into an agreement to that effect. Having the power to erect and maintain its own hospital, the city possessed the power to contract with the county for the joint use of its hospital. Under similar statutory conditions the Court of Appeals of Kentucky held that where a city and county combined for the treatment of persons within the county afflicted with smallpox, they were both responsible for the expense, the city for that incurred in treating those so afflicted within the city limits, and the county for that incurred in treating those so afflicted without the city. Pulaski County v. City of Somerset, 98 S. W. 1022.

2. It is further urged that the arrangement between the city and county authorities was invalid as a contract, because it amounted to the creation of a debt. While the resolution of the board of county commissioners and the acceptance of the proposal therein contained by the municipal authorities is called a contract in the petition, it is not strictly such, because the city does not undertake to send any or all of its patients to the county hospital. It is more of an arrangement in the nature of a working basis between the authorities of the two sanitary districts; a sort of modus vivendi until the authorities decide to establish separate pest-houses. It does not undertake to bind the city from establishing its own pest-house, nor does it require the city to send its patients to the

county pest-house. It amounts to a continuing offer by the county, until terminated by notice, that it will accept, treat, and provide for the city's smallpox patients on a co-operative plan, with a division of the expenses, proportioned according to the number of patients received from the city and from the county. When the city sent its patients to the county hospital, pending this continuing offer the county, in the absence of notice to the contrary, might well assume that the patients were sent by virtue of this arrangement; and it should receive compensation for their treatment as provided in the resolution.

<div align="center">

*Judgment affirmed. All the Justices concur.*